```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF MINNESOTA
                     05-CR-368(JMR/FLN)
```

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| Stephen M. Farish | ) | |

Petitioner, Stephen M. Farish, seeks relief under 28 U.S.C. § 2255 on multiple grounds. His petition is denied.

I. Background

On February 7, 2006, petitioner was indicted on one count of arson; three gun-related charges; and six counts of making false statements to government agents. Trial commenced on May 31, 2006.

    A. Trial Testimony

In November 2002, petitioner's girlfriend, Monica Leinen, "keyed" petitioner's car. The government offered evidence showing petitioner had physically abused her on two occasions. Ms. Leinen stayed with her friend, Susan Metzger, after these incidents. Farish mistakenly believed Ms. Metzger was the one who damaged his car.

In retaliation, petitioner hired Che Romero to torch Metzger's home in Minneapolis, Minnesota. While zealous, Romero was inept. First, he attempted arson at the wrong home, igniting two cars on Wentworth Avenue in South Minneapolis. Then, in early December 2002, Romero and his cousin, Miguel Monette, returned to the wrong address and threw two Molotov cocktails at the home terrorizing the

occupants. Eventually, Romero found Metzger's correct home address on Diamond Lake Road and set it on fire on December 18, 2002.

The government's evidence showed Farish agreed to compensate Romero by allowing him to steal two cars from the auto dealership at which he worked. Romero stole a new Dodge Caravan.

The Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") agents eventually investigated the South Minneapolis fires. As part of the investigation, ATF Agent David Gottschalk questioned petitioner, who denied knowing Romero on six separate occasions.

After a two-week trial, petitioner was convicted of arson and making false statements to federal agents, in violation of 18 U.S.C. § 844(i),(n) & 2, and 18 U.S.C. § 1101. He was acquitted on the gun counts.

Following the trial, petitioner fired his attorney. He was represented by court-appointed counsel at the sentencing hearing.

B. <u>Sentencing</u>

On June 1, 2007, petitioner was sentenced to 108 months, and ordered to pay restitution of $73,873.36. Sentencing guidelines were calculated applying a base offense level of 24 for a person who knowingly created a substantial risk of death or serious bodily injury. This was enhanced by two levels based on petitioner's role in the offense, pursuant to U.S.S.G. § 3B1.1(c), and a further two-level enhancement was applied for obstruction of justice, pursuant to U.S.S.G. § 3C1.1.

At the sentencing hearing, petitioner's attorney objected to the Court's calculations, arguing for a base offense level of 20, claiming petitioner did not act knowingly. (Sentencing Tr. 14:20-22.) The Court maintained its calculation, resulting in a total offense level of 28, a criminal history category of II, and an advisory sentencing range of 87 to 108 months imprisonment.

Petitioner appealed his sentence and conviction. He argued the trial court erred in admitting evidence of his domestic abuse; gave improper jury instructions; and miscalculated both his base offense level and his restitution. The Eighth Circuit Court of Appeals vacated a portion of the restitution award and affirmed the sentence. See United States v. Farish, 535 F.3d 815 (8th Cir. 2008). This Court issued an amended sentencing judgment on November 20, 2008, and petitioner's conviction became final on December 31, 2008.

On November 23, 2009, petitioner wrote to his trial attorney, Earl Gray, requesting information for a § 2255 motion. One week later, Mr. Gray responded:

> I do believe you had a fair trial. As I recall you were acquitted of the most serious charge. I'm guessing, and this is purely a guess, I think it would have been smarter to fire me after the sentencing, and then hire a new lawyer for the appeal. I am guessing that Judge Rosenbaum felt by firing me before sentencing you were blaming me for the loss and unwilling to accept any responsibility for your conduct including the false statements.

[Docket No. 149.]

3

### C. § 2255 Motion

On December 28, 2009, Farish filed for relief under 28 U.S.C. § 2255 [Docket No. 143] claiming ineffective assistance of counsel. He states his trial attorney, Mr. Gray, failed to exclude domestic violence evidence; negotiated defective jury instructions; failed to challenge the Court's sentencing calculations and jurisdiction; failed to raise an entrapment defense; did not hire a private investigator or investigate prosecutorial misconduct; did not negotiate or advise him of a possible plea agreement; failed to raise juror concerns, and improperly allowed a juror to sit on the panel whose daughter was a rape victim; and maintained an inappropriate relationship with the trial judge.

His petition also seeks appointment of counsel on his § 2255 petition [Docket No. 144]; production of documents from Mr. Gray, the ATF, and others [Docket Nos. 145-146]; to proceed in forma pauperis [Docket No. 150]; and to disqualify this Court from further proceedings [Docket Nos. 156 & 159]. He requests a hearing on these matters.

The government sought, and was granted, two extensions of time to reply. On March 24, 2010, the government filed its opposition to the § 2255 petition. The government also submitted Mr. Gray's affidavit in which he described his trial preparations, including: objecting to the introduction of domestic violence evidence; investigating the domestic violence accusations and government

4

witnesses; and discussing two plea offers with petitioner. (Gray Aff. ¶ 4(a)-(i).) Mr. Gray also states the jurors were impartial; the jury instructions "were proper;" there was no evidentiary support for an entrapment defense; there was no prosecutorial misconduct; and there was no improper relationship with the trial judge. (Gray Aff. ¶ 4(a)-(j).)

Petitioner requested, and this Court permitted, a reply, which was submitted on June 11, 2010 [Docket No. 164].

## II. Discussion

### A. Disqualification

Petitioner seeks this Court's disqualification pursuant to 28 U.S.C. § 455(a), which provides that "any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." In considering this issue, the Court asks "whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all of the relevant facts of a case." United States v. Aldridge, 561 F.3d 759, 764 (8th Cir. 2009). Petitioner alleges Mr. Gray improperly influenced the judge's sentencing decision, and the judge favored the government during the § 2255 proceedings. There is no basis for either allegation.

Petitioner premises his claim of improper influence on the Court on Mr. Gray's letter, dated November 30, 2009, wherein he

states: "I'm guessing, and this is purely a guess, I think it would have been smarter to fire me after the sentencing, and then hire a new lawyer for the appeal. I am guessing that Judge Rosenbaum felt by firing me before sentencing you were blaming me for the loss . . . ." [Docket No. 149.] Based on this offhand conjecture, petitioner concludes the trial judge sentenced him "for reasons other than those set forth at sentencing." [Docket No. 156.]

The letter provides no basis whatsoever for petitioner's claim. Mr. Gray was not privy to the Court's reasons for imposing the sentence it did, nor does he suggest he influenced the Court's sentencing decision in any way. To the contrary, his letter makes clear he has no knowledge of how the Court reaches a sentence; he offers only "a guess."

Petitioner next complains of the time extensions granted to the government to respond to his § 2255 petition, and states he was not not afforded a similar opportunity. These facts neither suggest a lack of impartiality, nor are they accurate.

"[J]udicial rulings alone almost never constitute a valid basis for bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994). More importantly, however, petitioner was afforded a full opportunity to respond to the government's filings. The Court permitted petitioner to reply to the government's opposition [Docket No. 163], and the Court read and considered his

numerous filings, regardless of their compliance with the Local Rules.

B. <u>Ineffective Assistance of Counsel</u>

The habeas statute, 28 U.S.C. § 2255, provides a remedy to "a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." <u>United States v. Apfel</u>, 97 F.3d 1074, 1076 (8th Cir. 1996). It is not, of course, a substitute for issues which could have been raised on initial appeal. <u>United States v. Frady</u>, 456 U.S. 152, 165-68 (1982).

Petitioner suggests ten instances of ineffective assistance of counsel. To succeed on these claims, he must show Mr. Gray's representation fell below an objective standard of reasonableness resulting in prejudice. <u>Keys v. United States</u>, 545 F.3d 644, 646 (8th Cir. 2008)(citing <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1984)). Counsel's errors must be serious enough "to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687. "There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>United States v. Rice</u>, 449 F.3d 887, 897 (8th Cir. 2006)(quotations omitted). With these principles in mind, the Court addresses each claim.

1. <u>Inadmissible Evidence</u>

Petitioner claims Mr. Gray did not effectively argue to suppress evidence of his domestic abuse record, and he was unable to present his own allegations of domestic violence, or rebut the testimony. He further claims Mr. Gray failed to "properly investigate" the domestic violence allegations.

This issue was aired on direct appeal, and may not be re-litigated here. <u>See</u> <u>United States v. McGee</u>, 201 F.3d 1022, 1023 (8th Cir. 2000). The Eighth Circuit reviewed this Court's decision to admit evidence of petitioner's "acts of domestic abuse," and found "the probative value of the evidence was not substantially outweighed by any unfair prejudice." <u>Farish</u>, 535 F.3d at 820. The appellate court found that even if "the district court erred in admitting the evidence . . . such error would be harmless." <u>Id.</u> Accordingly, there was no ineffective assistance of counsel by allowing its admission.

Even so, petitioner has entirely failed to demonstrate ineffective assistance regarding this evidence. To the contrary, Mr. Gray objected to the domestic abuse evidence both prior to, and at trial. (Gray Aff. ¶ 4(a).) Indeed, the defense submitted an eight-page memorandum opposing the evidence. [Docket No. 64.] Beyond these efforts, Mr. Gray "conducted an independent investigation" as to the domestic violence claims, and "obtained the documents" needed for cross-examination. (Gray Aff. ¶ 4(a).)

8

His extensive efforts to exclude and address this evidence show his representation was effective.

### 2. Jury Instructions

Petitioner claims ineffective assistance of counsel in negotiating improper jury instructions, which he claims: 1) permitted jurors to convict him of arson at the Wentworth Avenue home, rather than the Diamond Lake home; 2) did not require proof the building was used in interstate commerce; and 3) permitted a conviction for either arson or conspiracy, "denying the right to indictment by a grand jury." [Docket No. 143.]

Here, again, his complaint is foreclosed on direct appeal. The Eighth Circuit concluded that, "[t]aken as a whole," the jury instructions fairly and adequately submitted these issues to the jury. Farish, 535 F.3d at 823. There is no basis to find Mr. Gray's efforts fell below an objective standard of reasonableness or prejudiced petitioner in this regard.

### 3. Sentence Calculation

Petitioner argues his sentencing guideline calculations resulted from ineffective assistance of counsel. This is plain silly. The Court fashions its own guideline calculations. Petitioner claims neither he nor Romero knowingly created a substantial risk of death or serious injury. From this premise, he argues he could not have acted knowingly, and the base offense level should have been 20, not 24. Once again, this argument is

9

precluded by the Eighth Circuit's determination that "the district court did not err" in applying a "base offense level of 24." Farish, 535 F.3d at 825.

Even if the Court considered this argument, petitioner fails to demonstrate ineffective assistance of counsel because this issue was vigorously contested at sentencing.[1] Counsel is not "ineffective" in argument simply because the Court rejects the argument. United States v. Agboola, No. 01-162, 2006 U.S. Dist. LEXIS 62302, at *12 (D. Minn. Aug. 30, 2006). It was argued the Court should calculate a base offense level of 20 because petitioner and Che Romero "intended no harm to anyone." (Sentencing Tr. 15:7-8.) The representation was not ineffective; the Court simply disagreed, concluding "there was a definite effort to create a substantial risk of death or bodily injury," and applied a base offense level of 24. (Sentencing Tr. 28:14-15.) The Court reached this conclusion "easily and comfortably." (Sentencing Tr. 29:17.) Even today, the Court would find that someone who attempts to torch or burn people's homes could be considered to have knowingly intended to harm them. Petitioner's claims fail on this issue.

---

[1] Petitioner faults Mr. Gray for failing to raise this issue at sentencing. The Court, however, notes he had fired Mr. Gray by that time.

4. <u>Jurisdiction</u>

Petitioner complains Mr. Gray was ineffective in failing to object to "the essential element of jurisdiction." [Docket No. 143.] He denies the government established jurisdiction over the Diamond Lake Road property. Because Mr. Gray did not raise this issue, petitioner concludes he received ineffective assistance.

Again, the Eighth Circuit ruled against petitioner on this issue. <u>See</u> <u>Farish</u>, 535 F.3d at 823 ("[T]he district court clearly instructed the jury that the crime of arson required them to find that 'the building located at 117 Diamond Lake Road West . . . was used in interstate commerce.'")

Even if the Eighth Circuit had not spoken, petitioner cannot challenge his attorney's strategic determination to avoid this issue. "[D]ecisions involving trial strategy are virtually unchallengeable." <u>Loefer v. United States</u>, 604 F.3d 1028, 1030 (8th Cir. 2010) (quotations omitted). Mr. Gray explained he "was fully prepared to contest the issue of jurisdiction." He decided, however, "[i]n light of the overwhelming evidence adduced at trial that the subject property was residential rental property, it was pointless to argue the jurisdictional element to the jury." (Gray Aff. ¶ 4(d).) This decision was objectively reasonable, and not at all ineffective.

5. <u>Entrapment</u>

Petitioner states he requested a "defense of entrapment" in his dealings with ATF Agent Gottschalk. These are the conversations upon which his charge of giving false information are premised. Petitioner states Agent Gottschalk repeatedly met with him, never advised him of his rights to counsel, and entrapped him into "suppressing his knowledge" of Che Romero. Where Mr. Gray "[r]efused to even discuss this defense," petitioner concludes he received ineffective assistance. [Docket No. 143.] His theory fails in the absence of any factual support.

Where the facts do not support an entrapment defense, petitioner cannot show counsel's performance fell below an objective standard of reasonableness. Entrapment occurs when the government induces a person to commit a crime, and the induced individual had no predisposition to commit the crime. <u>Mathews v. United States</u>, 485 U.S. 58, 63 (1988). Here, Agent Gottschalk spoke to petitioner as part of his investigation of the South Minneapolis fires. (Tr. 518:11-12.) When he met petitioner, he tendered a photo ID, his credentials, and identified himself as an ATF agent. (Tr. 523:18-22.) There is no evidence to suggest Agent Gottschalk, or any other government agent, induced petitioner to commit a crime. Mr. Gray discussed and explained these facts to petitioner, and opted against an entrapment defense. (<u>See</u> Gray Aff.¶ 4(e).) His performance is not defective for failing to raise

a defense without a factual basis upon which it would be pursued.

      6.    <u>Investigation</u>

Petitioner next claims Mr. Gray failed to hire an investigator to interview government witnesses, although he asked counsel to "hire an investigator" to "test" the government's witnesses. [Docket No. 143.] Because Mr. Gray "refused to act," petitioner maintains he received ineffective assistance. Again, the Court disagrees.

Petitioner discloses no facts that would have been discovered by an investigation. See <u>United States v. Davis</u>, 406 F.3d 505, 510 (8th Cir. 2005)(rejecting ineffective assistance claim where petitioner failed to establish pre-trial investigation would have changed trial's outcome). Mr. Gray decided it would be "more beneficial" to petitioner if he undertook his own examination of the government witnesses. (Gray Aff. ¶ 4(f).) The most cursory review of the trial transcript will reveal the scrupulous cross-examination Mr. Gray conducted of the government's witnesses. There is no support for this claim.

      7.    <u>Prosecutorial Misconduct</u>

Petitioner claims the government suppressed exculpatory evidence. He has concocted a theory by which Agent Gottschalk provided undisclosed favors to government witnesses. Further, he suggests an investigator would have uncovered this misconduct, and

13

the failure to hire an investigator constituted ineffective assistance. This "theory" is made up of the whole cloth.

Petitioner offers no support whatsoever for this claim, beyond wild conjecture. The claim therefore fails.

    8. <u>Plea Agreement</u>

Petitioner claims Mr. Gray failed to present him with plea offers, in violation of his Fifth and Sixth Amendment rights. This claim is completely contradicted by the evidence.

The government offered petitioner two plea agreements, and attached copies of those offers to its submissions. (Gov. Attach. 2 & 3.) Mr. Gray received both offers and discussed them with petitioner. Petitioner rejected the offers and said he wanted to go to trial. (Gray Aff. ¶ 4(h).)

Petitioner's own submissions acknowledge receipt of at least one plea offer. <u>See</u> Petitioner's 2255 Mot. at 11, <u>United States v. Stephen Farish</u>, 05-CR-368 (D. Minn. Dec. 28, 2009). Petitioner, however, complains the offer required he admit "the most serious charge in the information." <u>Id.</u> ("The plea agreement which was presented to Farish, was a written plea deal in which he must admit to the most serious charge in the information."). This may be true, but neither the Fifth or Sixth Amendments, nor any other Constitutional Amendment, gives a defendant a right to a plea agreement of his own choosing.

14

9. <u>Jury Composition</u>

Petitioner alleges Mr. Gray was ineffective in jury management because a juror's daughter may have been a rape victim. He believes the alternate juror appeared sympathetic, and concludes the jury would have reached a different outcome had the alternate juror been substituted for the seated juror at trial. He further states two jurors slept during the trial.

The Court received information that one sitting juror's daughter may have been raped after the juror was seated; the information was given to counsel at sidebar. Both Mr. Gray and Ms. MacDonald agreed the Court should speak with the juror. (Tr. 363:17-364:3.) This was done, in chambers, and on the record. The transcript of the conversation was read to the attorneys. (Tr. 369:5.)

On in camera examination, the juror stated he could serve impartially. Mr. Gray states he did not believe his client would be "prejudiced in any way by leaving the juror on the panel." (Gray Aff. ¶ 4(i).) The Court finds no evidence of ineffective assistance in this regard.

Finally, there is absolutely no evidence, beyond petitioner's say-so, that any jurors slept during portions of the trial. (<u>Id.</u>)

10. <u>Trial Judge's Impartiality</u>

Petitioner's final complaint alleges Mr. Gray maintained an improper relationship with the judge in his case. The Court

15

disagrees, and has previously addressed these concerns. Beyond this, petitioner offers no evidence at all showing any basis upon which he could have a well-founded belief of any relationship at all - whether proper or improper.

    C. <u>Evidentiary Hearing</u>

The Court declines to hold an evidentiary hearing. <u>See</u> <u>Noe v. United States</u>, 601 F.3d 784, 792 (8th Cir. 2010). ("An evidentiary hearing on a 2255 petition may be denied if the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief.")

    D. <u>Certificate of Appealability/IFP</u>

The Court considers whether a Certificate of Appealability should be issued. <u>See</u> <u>Tiedeman v. Benson</u>, 122 F.3d 518, 522 (8th Cir. 1997). Under 28 U.S.C. § 2253(c)(2), an appeal may issue after final order in a § 2255 proceeding "only if the applicant has made a substantial showing of the denial of a constitutional right." Petitioner does not demonstrate the denial of any constitutional right, and this Court declines to issue a Certificate of Appealability.

Petitioner also asks to proceed in forma pauperis. This motion was granted in the Court's January 10, 2007, Order.

III. <u>Conclusion</u>

The gravamen of petitioner's complaint is that he received ineffective assistance of counsel because the jury found him guilty

16

on several counts in the indictment. The fact that a person who is criminally charged is convicted of various offenses does not at all show ineffective assistance of counsel. Petitioner received a fair trial, and thoroughly effective representation. As the Eighth Circuit noted, "[t]he evidence against Farish was strong." Farish, 535 F.3d at 820. Accordingly, the Court concludes petitioner received "a trial whose result is reliable." Strickland, 466 U.S. at 687. The § 2255 petition is denied.

Accordingly, IT IS ORDERED that:

1. Petitioner's motion for relief pursuant to 28 U.S.C. § 2255 is denied with prejudice [Docket No. 143];

2. Petitioner's motion to appoint counsel is denied [Docket No. 144];

3. Petitioner's consolidated motion to compel the ATF and Mr. Gray to produce certain documents is dismissed as moot [Docket Nos. 145-146];

4. Petitioner's motion to stay proceedings pending disposition of motions to compel is dismissed as moot [Docket No. 147];

5. Petitioner's application to proceed in forma pauperis is granted [Docket No. 150];

6. Petitioner's motion to reconsider is dismissed as moot [Docket No. 154];

7. Petitioner's motions to disqualify are denied [Docket Nos. 156 & 159]; and

8. No Certificate of Appealability shall issue.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 5, 2010

<u>s/ James M. Rosenbaum</u><br>
JAMES M. ROSENBAUM<br>
United States District Judge